*Kinney, Ballou & McClanahan* for complainant.

*A. S. Hartwell* for respondent.

---

# IN RE ASSESSMENT OF TAXES, ESTATE OF BERNICE P. BISHOP.

APPEAL FROM TAX APPEAL COURT, HONOLULU.

SUBMITTED NOVEMBER 13, 1901.   DECIDED NOVEMBER 26, 1901.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

A decision of a Tax Appeal Court, though not having the conclusiveness of a jury verdict, should not be disturbed for light reasons.

To apply the eight year rental rule (Civ. L., Sec. 820) to determine the value of the landlord's interest in land for purposes of taxation would be manifestly unfair and unjust where the land was leased nineteen years ago at a rental of only $100 a year and is now worth $30,000, although the lease has twenty-one years yet to run. The landlord's interest is assessed at $7,500.

When a tax-payer makes a return within the time prescribed by the statute, and the assessor gives him further time for furnishing

additional information, and he furnishes such information and it is accepted by the assessor as part of the return, the latter cannot object on appeal that the return was not complete in the first instance.

OPINION OF THE COURT BY FREAR, C.J.

This is an appeal by the Tax Assessor from the assessments made by the Tax Appeal Court of two pieces of land belonging to the Bishop estate.

The first is a lot fronting on Union Square in Honolulu, containing 8,350 square feet. Its dimensions are 90 feet on King street, 79.8 on Richards street, 94.5 on Merchant street, and 106 in the rear. It was returned at $30,000, assessed by the present assessor's predecessor in office at $80,000, admitted by the present assessor to be of the fair value of not over $50,000 and valued by the Tax Appeal Court at $30,000. The assessment was made as of January 1, 1901. The evidence was substantially as follows: This lot fronts on three streets and is vacant and unimproved. A lot, also vacant and unimproved, not far away, on another corner of the same block, nearer the center of the town, having about 35 feet frontage on Merchant street and 73 on Alakea, was sold in June, 1901, at the rate of $6.22 a square foot. It was returned for taxation by its former owner at the rate of $5.47 a square foot. There is no evidence as to the circumstances under which the sale took place. One witness, a government surveyor, testified that in June, 1900, he valued all the lots in this block for the Superintendent of Public Works, and that after due consideration he valued the lot just referred to at $4.44 a square foot and the lot now in question at $4.50 a square foot. Another surveyor, the superintendent and land agent of the estate in question, testified that the return of $30,000 or about $3.50 a square foot was made after careful study, and that there had been a tendency in 1900 towards a lowering of values. A lot in an adjoining block, nearer the center of the town, with a frontage on King street,

but not a corner lot, containing about 21,000 square feet, was sold in July, 1899, at auction at the date of a little less than $2 a square foot. The Tax Appeal Court state in their decision that two lots, not corner lots, adjoining the lot in question had been assessed at $2.40 and $2.25 a square foot, though we do not find this in the transcript of the evidence. The evidence is rather meager on which to base an estimate of the value of the lot. While the decision of the Tax Appeal Court has not the conclusiveness of a jury verdict, it is entitled to some weight. We do not find sufficient reason in this instance for disturbing the finding of that court and accordingly it is affirmed.

The other lot is one of about eleven acres situated at Pawaa, in Honolulu, with a frontage on the lower side of King street between Sheridan street and the Waikiki road. It was returned at $800, assessed at $30,000, and valued by the Tax Appeal Court at $800. The peculiar feature is that the tract is subject to a lease for forty years at a rental of only $100 a year, the lease having twenty-one and a half years yet to run. There seems to be no dispute that the land unincumbered is worth $30,000, as held by the Tax Appeal Court. But as it is rented for only $100 a year, that court valued the land, subject to the lease, at only $800—presumably under the provision of the statute (Civ. L., Sec. 820), "that when any real estate or house is leased or rented, the sum of eight years' rental thereof shall be the assessment value of such real estate or house, unless such valuation shall be manifestly unfair or unjust." This "eight year rental rule" was discussed in *Parker v. Shaw*, 9 Haw. 407, and *Chilton v. Shaw*, 13 Haw., 250. A valuation under that rule is generally "manifestly unfair and unjust" when, as here, the property was leased years ago at a smaller rental than could now be obtained. Just what the valuation of the landlord's interest in such a case should be, depends principally on the length of the unexpired term of the lease and the difference between the stipulated rental and the market rental value. The value of the landlord's interest increases and that of the tenant's interest decreases as the expiration of the term approaches, other

43

things remaining constant. Of course, the value of the property as a whole may change so that the values of both interests may increase or decrease absolutely, though the values may change in different directions relatively to each other. Presumably when the lease was made, the stipulated rental was the market rental value. If that were so, the value of the land at that time on the eight year basis was $800. It has now increased to $30,000. A portion of this increase belongs to the landlord, who should pay taxes on that portion. This is a property tax, not an income tax. The Tax Appeal Court by following the eight year rule practically released from taxation a property worth $29,200 ($30,000—$800) to come into possession twenty-one years hence. The trustees of the Bishop estate themselves consented to an assessment of $5,000 before the Tax Appeal Court. In our opinion it may safely be placed at $7,500. This would be less than $800 plus a sum that would at seven per cent. compound interest amount to $29,200 in twenty-one years, that is, the present value of $29,200 to be received at the end of twenty-one years, discounting at the rate of seven per cent. per annum, compound interest.

Counsel for the assessor urge, however, that the owner cannot set up the fact that there is an outstanding lease for a long term at a low rental, for the reason that the lease was not mentioned in the return. The statute requires that the return shall be made in the month of January and that it shall enumerate among other things all leases with the names and residences of the persons to whom the leases are made (Civ. L., Sec. 870) and provides (Sec. 872) that if any person shall refuse or neglect to make said return, &c., the assessor may make the assessment according to the best information within his reach, and the same shall be conclusive, and not subject to appeal. It appears that the return was made within the time prescribed by the statute and that the land in question was described therein, but mention was not made that it was subject to the lease; but the assessor's predecessor gave further time for the filing of a sched-

ule of the leases of the estate, and such a schedule was prepared and handed to him in the month of May and was accepted by him as one of the documents to go with the return, but the present assessor did not know of this. The assessor then found this schedule, and produced it before the Tax Appeal Court.

The person making the return should take care that he complies with the statute and properly describes his interest in the property. It may be that the return blanks furnished by the assessor should be more explicit. The only column provided in those blanks for descriptions of leases by landlords is that which is headed "Description and Situation of Land and Improvements." There is no specific reference to leases or special interests in land. But if a person omits to properly describe his interest in a tract of land, he cannot complain if the assessor assesses him as sole owner in the absence of other information as to outstanding leases or other interests. On the other hand, it is to be observed, that even when a person refuses or neglects to make any return whatever, the assessor cannot act arbitrarily or capriciously. He must make the assessment "according to the best information within his reach." His valuation, even though greatly excessive, may not be subject to appeal, but there may be other remedies in case it could be shown that he had acted fraudulently or capriciously or with gross carelessness and not according to the best information within his reach. It may be a question how far the requirements of the statute can be waived by the assessor. It is clear that there are some provisions that he cannot waive, as, for instance, that which adds ten per cent. to the tax after it becomes delinquent. But there would be nothing to prevent him from using, in making an assessment, any information that might be furnished him by the tax-payer after the time limited for making the return, and, in our opinion, if the tax-payer acts in good faith, makes a return and is ready and willing to furnish further information, and the assessor expressly gives further time for furnishing such information and it is furnished and accepted by the assessor, the latter can not be permitted afterwards to set up that the

tax-payer had not fully complied with the statute in the first instance. The statute must be construed reasonably and with a view to carrying out the probable intention of the legislature. The legislature apparently inserted the penal provision in question mainly to prevent fraudulent or wilful or grossly careless violations of the statute and not to impose unnecessary hardships on those who endeavor in good faith to comply with the statute. It inserted the provision as to returns and what should be stated therein in order that the assessor might have the requisite information for making the assessment. In this instance he had just the information he desired and in a manner and at a time that was satisfactory to him and which he led the tax-payer to understand would be satisfactory. But for his action in granting further time, the tax-payer might have furnished the list of leases within the time named in the statute. See *New Canaan v. Hoyt*, 23 Conn., 148; *Lowell v. County Commissioner*, 3 Allen, 546; *Sharpe v. Engle*, 2 Okl., 624.

The decision of the Tax Appeal Court assessing the lot on Union Square at $30,000 is affirmed and that assessing the appellee's interest in the lot at Pawaa at $800 is reversed and that interest is assessed at $7,500.

*Robertson & Wilder* for the assessor.

*Holmes & Stanley* for the Bishop Estate.